United States District Court
Eastern District of New York                                         1:18-cv-02221

| | |
|---|---|
| Danielle Louis individually and on behalf of all others similarly situated | |
| Plaintiff | |
| - against - | Complaint |
| The Stop & Shop Supermarket Company LLC | |
| Defendant | |

The above-named plaintiff individually and on behalf of all others similarly situated, by attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

1.  The Stop & Shop Supermarket Company LLC ("defendant") manufactures, distributes and sells refrigerated ready-to-eat mashed potatoes (the "Products") in its nationwide supermarkets.

2.  The Products are under defendant's "Stop & Shop Brand," a "store brand" or "private label" product.

3.  Private label refers to the practice where a product is manufactured or packaged for sale under the name of the retailer rather than that of the manufacturer.

4.  Since the 2008 recession, private label brands have experienced tremendous growth.

5.  Over the last three years, sales of store brands grew 18.2 percent, twice the rate of growth for national brands of 7.9 percent.

6.  While initially their growth was due in part to reduced purchasing power, their quality has since grown to match those products manufactured by the larger food companies.

7. Recent surveys have shown that 96 percent of consumers bought private-label brands at least some of the time, indicating widespread consumer acceptance.

8. Defendant's private label brands constitute almost 40 percent of all products sold.

9. Defendant promotes and develops its private label brands through weekly consumer surveys, test kitchens for formulation, taste tests, public relations, reaching out to food critics and commentators, television and print advertising and store signage.

10. More consumers are inclined to reject packaged foods from the big food companies which typically contain long lists of ingredients in favor of store brands which emphasize their wholesome qualities and presence of "real" ingredients.

11. The Products are available in no fewer than the following varieties: Homestyle, Garlic, Sour Cream & Chive and available in 24 and 32-ounce packages.

12. The representations are identical across the Products, except for those elements which depict the specific variety (i.e., garlic) and are substantially similar to the image below.



13. The labels state "Made with Real Milk & Butter" directly underneath "Homestyle Mashed Potatoes."

14. The back of the label contains the nutrition facts and the ingredient list, shown below.

**Nutrition Facts**
Serving Size 1/2 cup (120g)
Servings Per Container about 6

Calories 150
Calories from Fat 60

*Percent Daily Values (DV) are based on a 2,000 calorie diet.

| | Amount Per Serving | %DV* | Amount Per Serving | %DV* |
|---|---|---|---|---|
| Total Fat | 6g | 9% | Total Carb. 21g | 7% |
| Saturated Fat | 3g | 15% | Dietary Fiber 2g | 8% |
| Trans Fat | 0g | | Sugars 1g | |
| Cholesterol | 10mg | 3% | Protein 3g | |
| Sodium | 430mg | 18% | | |

Vitamin A 6% • Vitamin C 10% • Calcium 2% • Iron 6%

INGREDIENTS: POTATOES, MILK, BUTTER (SWEET CREAM, SALT), MARGARINE (LIQUID AND HYDROGENATED SOYBEAN OIL, WATER, SALT, CONTAINS LESS THAN 2% OF VEGETABLE MONO- AND DIGLYCERIDES, SOY LECITHIN, CITRIC ACID, NATURAL AND ARTIFICIAL FLAVOR, VITAMIN A PALMITATE), SALT, POTASSIUM SORBATE (TO PROTECT FLAVOR), MONO- AND DIGLYCERIDES, SPICE, ASCORBIC ACID, CITRIC ACID.

S-823    28437    0814

15. The labels are misleading because despite the centrality of butter to their marketing and labeling, they also contain margarine, indicated as the third ingredient above.

16. No reasonable consumer would expect a mashed potatoes product touting the presence of "real milk & butter" to contain the one product which is essentially the opposite of butter – margarine.

17. This is because butter and margarine have forever been rival food products unlike any other foods which have existed.

18. Butter is the quintessential natural and simple food, produced by churning the cream at the top of a cow's milk until the fat solidifies.

19. It is believed that butter was discovered by accident by nomadic herdsmen of the Neolithic-era, who would attach sacks containing milk to their pack animals, which after days of jostling, would be churned into butter.

3

20. Margarine's origins are not the result of happenstance, but the result of the French government seeking a lower quality and cheaper butter alternative in the late 19th century.

21. Margarine is made through converting vegetable oils from liquid to solid through hydrogenation, fractionation and interesterification, in the presence of chemical and enzymatic catalysts.

22. From the beginning of margarine's introduction to the U.S., there was coordinated opposition by the dairy lobby, resulting in Congress passing The Oleomargarine Act of 1886, which taxed margarine and defined butter. See Geoffrey P. Miller, *Public Choice at the Dawn of the Special Interest State: The Story of Butter and Margarine*, Cal. Law Review 77 (1989) (describing the rise of the dairy lobby in response to margarine's introduction to the U.S.); *see also* W. T. Mickle, *Margarine Legislation*, American Journal of Agricultural Economics (Aug. 1941).

23. States including Wisconsin, Maine and Minnesota went even further and banned margarine altogether.

24. Because margarine manufacturers died the product yellow to pass off as butter, 32 states had imposed color constraints on margarine which prevented it from being sold in such a deceptive fashion.

25. States even required that margarine be died pink, red, brown and other colors, so that consumers of the day would not be tricked to purchase it thinking it was butter. Rebecca Rupp, *The Butter Wars: When Margarine Was Pink*, National Geographic Blog – The Plate – Serving daily discussions on food (Aug. 13, 2014); see also Ruth Dupré, *"If It's Yellow, It Must be Butter": Margarine Regulation in North America Since 1886*, Journal of Econ. History, (1999).

26. Margarine was helped by the Great Depression, which made it more prevalent due

to its lower cost and the rationing and shortages of butter during World War II.

27. The post-war decades saw margarine consumption per person surpass butter, and public health advocates cautioned against saturated fats present in butter.

28. By the mid-1970s, margarine consumption was 12 pounds per person, three times that of butter.

29. Gradually, scientists and public health advocates began to reassess the harm caused by the saturated fat of butter and discovered that the process for making margarine (hydrogenation) created trans fats, which were determined to be more harmful than saturated fat.

30. Additionally, it was recognized that fat content was not as responsible for the epidemic of health-related issues as other food components, such as sugar.

31. Mashed potatoes are typically made and/or prepared with fats and oils, like butter or margarine.

32. This is because the naturally dry texture of potatoes requires such an ingredient to enhance their texture, viscosity, palatability and to provide lubrication in the mouth.

33. Consumers' preference for butter over margarine, in general, and in potatoes, is because they:

- value butter's unique taste, owing to more than 120 naturally occurring flavor compounds including methyl ketones and lactones;
- are familiar with its ability to enhance the texture and other qualities of (mashed) potato products;
- and prefer the mouthfeel of butter since it melts at a normal body temperature, while margarine has a higher melting point, resulting in a greasy aftertaste on the palate.

34. One of the primary reasons why consumption of butter now exceeds margarine is because they are part of different food categories, the former being natural, simple and minimally processed, while the latter is the epitome of an artificial and processed food consumers are trying to avoid.

35. There is no expectation by a reasonable consumer that mashed potatoes would be consumed with butter and margarine – the front label declaration of butter is the de facto exclusion of margarine.

36. A 2011 report by Mintel, the leading global market research firm, determined that 68% of consumers believed that butter substitutes such as margarine contain *too many* artificial ingredients as opposed to butter's pure and natural composition. Mintel, *Report on Butter, Margarine and Spreads – US (Aug. 2011)*; see also, Brenda Reau, *Butter is Gaining Ground with Consumer Demand for Natural Products*, Michigan State University Extension Product Center (Sep. 15, 2011).

37. This distinction is evident from their sub-ingredients in the Products.

| Butter | Margarine |
|---|---|
| - Sweet Cream<br>- Salt | - Liquid and Hydrogenated Soybean Oil<br>- Water<br>- Salt<br>- Contains Less than 2% of<br>  - Vegetable Mono- and Diglycerides<br>  - Soy Lecithin<br>  - Citric Acid<br>  - Natural and Artificial Flavor<br>  - Vitamin A Palmitate |

38. The representations purport to portray the Products as being comparable to what a consumer would make at home, describing them as "homestyle."

6

39. To the extent reasonable consumers consume butter *and* margarine, this would only be done in separate foods (i.e., butter for baking muffins, margarine for preparing vegetables), instead of using a bit of each within the same food.

40. This is no different from how almost all consumers would prefer to watch one entire movie than half of two movies, or drink iced coffee instead of hot coffee on a summer day – variety is not always preferred.

41. The preferences of reasonable consumers are borne out by looking at how they eat mashed potatoes.

42. Allrecipes.com is the country's most-visited recipe site, according to the Alexa.com, the premier commercial internet traffic data and analytics firm, and eBizMBA.com, which combines data from Alexa with other similar services such as Compete and Quantcase.

43. Allrecipes.com has the most user-contributed recipes and is the most influential site in its category, as measured by time spent there and links from other sites.

44. This is shown and can be replicated by visiting google.com and entering the two combinations of Search Terms 1 and 2 followed by "site:allrecipes.com/recipe," as shown below.

| Subdomain URL | Search Term 1 | Search Term 2 | Results |
|---|---|---|---|
| site:allrecipes.com/recipe | "mashed potatoes" | "butter or margarine" | 171 |
| | | "butter and margarine" | 0 |

45. When "mashed potatoes" is combined with "butter or margarine," Allrecipes.com retrieves 171 distinct, user-generated recipes which include "mashed potatoes" in the name (i.e., Whipped Mashed Potatoes, Rosemary Mashed Potatoes, etc.).

46. In contrast, where "mashed potatoes" is combined with "butter and margarine," Allrecipes.com is unable to locate a single entry.

47. This illustrates that when consumers have mashed potatoes, they will seek a version which has butter or margarine, but never both.

48. Consumers reasonably expect food manufacturers to make products in a way that is familiar and appealing to them, based upon their typical experiences and preferences.

49. Other similar mashed potato products situated adjacent to defendant's, made by Pineland Farms and/or Bob Evans, below, only use butter.

<u>Front Label</u>     <u>Ingredients</u>





8

50. Consumers have strong preferences about butter and margarine. Nina Martyris, *Operation Margarine: Tracing the Wartime Rise of Ersatz Butter*, Harper's Magazine – Blog (May 2, 2014) (describing the intensity of reactions brought about by replacing butter with margarine and noting "Margarine thrives on adversity, and its origins are rooted in it."); Libby Copeland, *New Book Clarifies Butter's Spread and Chronicles Its Wars With Margarine*, Smithsonian.com (Nov. 21, 2016) ("For decades there's been a huge butter versus margarine debate").

51. Food scientists who have studied the usage of butter vis-à-vis margarine confirmed this, noting that "consumers appeared to fall primarily into 2 groups: butter-only consumers, and margarine + butter consumers. Individuals who consumed margarine on a regular basis quite often used butter for special occasions or for baking." A.J. Krause, *Identification of the Characteristics that Drive Consumer Liking of Butter*, Journal of Dairy Science (2007).

52. While margarine consumers still consume butter, those who favor butter are less likely to consume margarine. M. Michicich, *Consumer Acceptance, Consumption and Sensory Attributes of Spreads Made from Designer Fats*, Food Quality and Preference (1999) ("When subjects were categorized as butter or margarine users, it became apparent that butter users were more discriminating than margarine users, who had no preference among the spreads.").

53. Excluding tax, the Products cost no less than $3.99, a premium price compared to other similar products.

Jurisdiction and Venue

54. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

55. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

56. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

57. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

58. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

59. The classes consist of (1) all consumers in all states and (2) all consumers in New York State who purchased any Products bearing any actionable representations during the statutes of limitation periods.

60. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

61. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

62. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

63. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

64. Plaintiff is an adequate representative because his/her interests do not conflict with other members.

65. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

66. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

67. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

68. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Parties

69. Plaintiff is a citizen of Queens County, New York.

70. Defendant is a Delaware limited liability company with a principal place of business in Quincy, Massachusetts and upon information and belief, no member is a citizen of this state.

71. Defendant is a subsidiary of a Dutch food conglomerate and one of the oldest and largest operator of supermarkets in the U.S.

72. Defendant has in excess of 420 stores across the country, 82,000 employees and $15 billion in revenue per annum.

73. Plaintiff paid a premium relative to similar products because prior to purchase, he/she saw and relied on the front label claims that the Products were (1) "Homestyle" and "Made With Real Milk & Butter," (3) never observed anyone eating mashed potatoes with butter or margarine, (4) only observed people choosing butter or margarine on mashed potatoes and (5) preferred butter over margarine.

74. In 2017, plaintiff purchased the Product(s) for no less than $3.99 per Product(s), excluding tax, at a store(s) of defendant within this District and/or state.

## Violations of New York General Business Law §§ 349 & 350

75. Plaintiff incorporates by references all preceding paragraphs.

76. Defendant's acts, practices, advertising, labeling, packaging, representations and

omissions are not unique to the parties and have a broader impact on the public.

77. Plaintiff desired to purchase a mashed potatoes product that had butter and not margarine, and reasonably believed that because the Products were self-designated as "homestyle" and highlighted the presence of butter on their front label, they did not contain margarine.

78. Defendant's representations are false, deceptive and misleading for the reasons described herein.

79. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have without getting all they bargained for.

Negligent Misrepresentation

80. Plaintiff incorporates by references all preceding paragraphs.

81. Defendant misrepresented the composition of the Products by highlighting butter, giving consumers the impression that they only contained butter to the exclusion of margarine, since consumers would never use butter and margarine on mashed potatoes.

82. Defendant had a duty to disclose that it did not subscribe to the tastes of typical American consumers when it comes to mashed potatoes.

83. At the time of the representations, defendant knew or should have known same were false or misleading, or made them without knowledge of their truth or veracity.

84. Defendant negligently misrepresented and/or negligently omitted material facts.

85. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

86. Plaintiff and class members would not have purchased the Products if the true facts had been known, thereby suffering damages.

Breach of Express Warranty and Implied Warranty of Merchantability

87. Plaintiff incorporates by references all preceding paragraphs.

88. Defendant manufactures and sells refrigerated mashed potato products.

89. Defendant warranted to plaintiff and class members that the Products did not contain margarine as a result of the prominent "Made with Real Milk & Butter" and "Homestyle" claims.

90. Since it is not conceivable to have mashed potatoes with butter and margarine, no reasonable consumer would expect the Products to contain margarine.

91. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

92. As a result, the Products lacked those attributes which are present in mashed potato products which contain butter to the exclusion of margarine.

93. Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

## Fraud

94. Plaintiff incorporates by references all preceding paragraphs.

95. Defendant's intent in making the "Made With Real Milk & Butter" and "Homestyle" claims was to take advantage of consumers common knowledge which do not expect mashed potatoes to have butter *and* margarine.

96. Defendant's actions were motivated by promotion of their private label brand against the competition of the national brands.

97. Plaintiff and class members observed and relied on defendant's front label claims and thereby believed the Products did not contain margarine.

98. Plaintiff and class members paid more than they would have due to defendant's fraud, entitling them to damages.

### Unjust Enrichment

99. Plaintiff incorporates by references all preceding paragraphs.

100. Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant(s) to correct its/their practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:   April 15, 2018

        Respectfully submitted,

        Levin-Epstein & Associates, P.C.
        /s/Joshua Levin-Epstein
        Joshua Levin-Epstein
        1 Penn Plaza, Suite 2527
        New York, NY 10119
        Tel: (212) 792-0046

                                                                            Sheehan & Associates, P.C.
                                                                            /s/Spencer Sheehan
                                                                            Spencer Sheehan
                                                                            891 Northern Blvd., Suite 201
                                                                            Great Neck, NY 11021
                                                                            Tel: (516) 303-0552
                                                                            spencer@spencersheehan.com

1:18-cv-02221
United States District Court
Eastern District of New York

Danielle Louis individually and on behalf of all others similarly situated

Plaintiff

- against -

The Stop & Shop Supermarket Company LLC

Defendant(s)

Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza # 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  April 15, 2018

 /s/ Joshua Levin-Epstein
Joshua Levin-Epstein
